# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAFAEL MERAN GARCIA,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | **NO. 26-2214** |
| **v.** | : | |
| | : | |
| **JL JAMISON, in his official capacity** | : | |
| **as warden of the Philadelphia Federal** | : | |
| **Detention Center, *et al.*,** | : | |
| *Respondents.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                       APRIL 24, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Petitioner Rafael Meran Garcia's, ("Petitioner" or "Mr. Meran Garcia"), *petition for writ of habeas corpus* filed pursuant to 28 U.S.C. § 2241, (the "Petition"), (ECF 1), which challenges his detention by the Department of Homeland Security, ("DHS"). In the Petition, Mr. Meran Garcia, a native of the Dominican Republic, contends that he is being illegally detained pursuant to Section 236 of the Immigration and Nationality Act, ("INA"), codified as 8 U.S.C. § 1226, ("Section 1226"), because he was deprived of proper notice and an opportunity to be heard before his immigration bond was revoked and he was re-detained. In their response, Respondents,[1] (hereinafter, the "Government"), argue that the Petition should be dismissed on the merits since Mr. Meran Garcia is being lawfully detained pursuant to Section 235(b) of the INA, codified as 8 U.S.C. § 1225(b), ("Section 1225(b)"). The issues have been

---

[1]    Mr. Meran Garcia named as Respondents the following individuals in their official capacities, *to wit*: Jamal L. Jamison, Warden of the Federal Detention Center in Philadelphia, Pennsylvania, (the "FDC"); Todd Lyons, Acting Director of the United States Immigration and Customs Enforcement, ("ICE"); Brian McShane, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia ICE Field Office, the Executive Office for Immigration Review; Todd Blanche, Acting United States Attorney General; and Markwayne Mullin, Secretary of the Department of Homeland Security, ("DHS"). (ECF 1).

fully briefed and are ripe for disposition.[2]  For the reasons set forth, Mr. Meran Garcia's *habeas corpus* Petition is denied.

**FACTUAL BACKGROUND**

On April 6, 2026, Mr. Meran Garcia filed the underlying counseled *habeas* Petition seeking, *inter alia,* release from detention.  (ECF 1).  To address the issues presented in the Petition, a summary of facts, gleaned from the documents submitted with the Petition, the Government's response, and Mr. Meran Garcia's reply, is helpful:

> On or about December 31, 2011, Mr. Meran Garcia, a citizen of the Dominican Republic, entered the United States, without inspection or being granted any status.  (ECF 1 at ¶ 6).  Mr. Meran Garcia settled in Delaware City, Delaware.  (*Id.*).
>
> On February 11, 2025, Mr. Meran Garcia was arrested by Delaware state officials and charged with aggravated menacing and endangering the welfare of a child.  (ECF 4 at pp. 6-7).  These criminal charges against Mr. Meran Garcia were *nolle prosequi*.[3]  (ECF 4 at pp. 6-7); (*see also* ECF 4-2 at p. 3).  At some point, between February 11 and February 21, 2025, Petitioner was detained at the ICE Moshannon Valley Processing Center in Philipsburg, Pennsylvania.  (ECF 4-1 at pp. 2-5).  On April 10, 2025, at Mr. Meran Garcia's request, an immigration judge held a custody redetermination hearing pursuant to 8 C.F.R. § 1236 and ordered his release on a $15,000 bond.  (ECF 1 at ¶¶ 14-15, pp. 20-21; ECF 4 at pp. 6-7).
>
> Thereafter, Mr. Meran Garcia attended the requested periodic check-ins with Immigration and Customs Enforcement, ("ICE"), under the supervision of the Enforcement and Removal Operations Philadelphia Field Office's Alternatives to Detention Program.  (ECF 1 at ¶ 17; ECF 4-2 at p. 2).  On December 8, 2025, Mr. Meran Garcia was notified of an October 8, 2027 in-person hearing in Newark, New Jersey, related to his removal proceedings.  (ECF 1 at pp. 36-37).
>
> On March 21, 2026, a judge with the Delaware Justice of the Peace Court issued a warrant for Mr. Meran Garcia's arrest for an alleged failure to obey a protection from abuse order.  (ECF 4 at p. 7).  Prior to Mr. Meran Garcia's regularly

---

[2]    While Mr. Meran Garcia filed a reply without first seeking leave in violation of Local Rule of Civil Procedure 7.1(c), this Court has considered the reply.

[3]    "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information, which can at any[ ]time be retracted to permit a revival of proceedings on the original bill or information."  *United States v. Simmons*, 69 F.4th 91, 93 (3d Cir. 2023) (internal quotation marks omitted) (quoting *Commonwealth v. Whiting*, 500 A.2d 806, 807 (Pa. 1985)).

scheduled ICE check-in scheduled for April 2, 2026, an ICE Deportation Officer verified that the arrest warrant's status was active.  (ECF 4-2 at p. 2).

Mr. Meran Garcia contends that, on April 2, 2026, at his regularly scheduled ICE check-in, the Government revoked his bond and arrested him without an explanation as to why it revoked his bond.  (ECF 1 at ¶¶ 3, 18, 21).  According to the ICE arrest report, (Form I-213),[4] drafted on the date of the check-in, ICE agents first reviewed Mr. Meran Garcia's immigration status and outstanding arrest warrant and then approached him with the assistance of an Intensive Supervisions Appearance Program, ("ISAP"), Spanish interpreter.  (ECF 4-2 at p.2).  The officers, through the ISAP interpreter, explained to Mr. Meran Garcia that his ICE bond was revoked due to the arrest warrant for the alleged violation of a state issued protection from abuse order, presented him with a signed Warrant for Arrest of Alien, (Form I-200) and a Notice – Immigration Bond Cancelled form, (a Form I-391), and informed him that he was under arrest and would be detained pending removal proceedings.  (ECF 4-2 at p. 2).  The Government's report further reflects acknowledgment of Mr. Meran Garcia's representation through an attorney, that he was given access to a phone, and advised of his right to speak to a consulate officer from the Dominican Republic, which he declined to exercise.  (*Id.* at p. 4).  According to the Government, Mr. Meran Garcia requested a voluntary departure. (*Id.*).

As noted, Mr. Meran Garcia filed a Petition for *writ of habeas corpus* on April 4, 2026.  (ECF 1).  On the same date, he also filed a motion for a temporary restraining order, (ECF 2).   By Order dated April 7, 2026, this Court granted Petitioner motion for a temporary restraining order and instructed the Government, *inter alia*, not to move or remove Mr. Meran Garcia outside of the City of Philadelphia or the FDC during the pendency of this matter.  (ECF 3).  Mr. Meran Garcia remains detained at the FDC.

**LEGAL STANDARD**

A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(1), (3).  The burden is on the petitioner to show that he is in custody in violation of the Constitution and/or federal law.  28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).  The

---

[4]   "[I]nformation on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the [noncitizen]."  *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022).

Fifth Amendment of the United States Constitution, ("Fifth Amendment"), entitles noncitizens to due process of law in deportation proceedings. *See Serrano-Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law."). Thus, the *habeas* Petition is properly before this Court.

**DISCUSSION**

In his *habeas* Petition, Mr. Meran Garcia seeks his immediate release from detention and attorneys' fees, (ECF 1 at ¶¶ 32-67), contending that his detention violates the INA,[5] as well as Sections 706(2)(A)-(C) of the Administrative Procedure Act, ("APA"), 5 U.S.C § 706(2)(A)-(C), and his substantive and procedural due process rights under the Due Process Clause of Fifth Amendment. (*Id.* at ¶¶ 43-67). Mr. Meran Garcia further contends that the Government's detainment was an *ultra vires* action. (*Id.* at ¶¶ 68-70). In its response, the Government argues that Mr. Meran Garcia's detention is constitutional and that he is being lawfully detained pursuant to the mandatory detention provision at Section 1225(b)(2)(A). (ECF 4 at pp. 8-13). For the reasons set forth and the particular circumstances of this case, this Court finds that Mr. Meran Garcia's detention is both lawful under the INA and its implementing regulations, and constitutional under the Due Process Clause of the Fifth Amendment.

### The INA and Implementing Regulations

Section 1226(a) of the INA provides that, "[o]n a warrant issued by the Attorney General, a [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to

---

[5]    Although not pled as a distinct claim, Mr. Meran Garcia advances arguments, as part of his APA claim, that he is being detained in violation of the INA and its implementing regulations. Because this Court finds that Mr. Meran Garcia's detention is unlawful pursuant to Section 1225(b)(2), but lawful pursuant to Section 1226(b) and constitutional pursuant to the Due Process Clause of the Fifth Amendment, it need not reach his APA and *ultra vires* arguments.

4

be removed from the United States."  8 U.S.C. § 1226(a); *see also* 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest.").  The Attorney General has the discretion to "release the [noncitizen] on . . . bond of at least $1,500 with security approved and containing conditions prescribed by the Attorney General[.]"  8 U.S.C. § 1226(a)(2)(A); *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (authorizing immigration judges to set bond pursuant to Section 1226).

After a noncitizen has been released on bond, the Government has broad discretion to revoke the noncitizen's bond and re-detain the noncitizen.  "The Attorney General at any time may revoke a bond or parole authorized under [Section 1226(a)], rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]."  8 U.S.C. § 1226(b).  Further, 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) provide that:

> [w]hen [a noncitizen] who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the [noncitizen] may be taken into physical custody and detained.  If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

Upon the revocation of their bond, a noncitizen may seek a redetermination hearing before an immigration judge pursuant to 8 C.F.R. §§ 236.1(c)(10), 1236.1(c)(10).[6]  *See In re Sugay*, 17 I.

---

[6]    "Subject to the provisions of this section, the provisions of [8 C.F.R .] § 1003.19 . . . shall govern availability to the respondent of recourse to other administrative authority for release from custody."  8 C.F.R. §§ 236.1(c)(10), 1236.1(c)(10).  Pursuant to 8 C.F.R. § 1003.19(a), "[c]ustody and bond determinations made by the service pursuant to [8 C.F.R. § 1236] may be reviewed by an Immigration Judge pursuant to [8 C.F.R. § 1236]."  *See also* 8 C.F.R. § 1.2 (defining "service" as "U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs

& N. Dec. 637, 639-40 (BIA 1981) (finding that similar language in the former version of the regulation, 8 C.F.R. § 242.2(c), provided a noncitizen whose bond had been revoked an opportunity to "again appeal the amount of bond set by the District Director, thus assuring that the District Director does not act arbitrarily or capriciously"). Although noncitizens are permitted to seek an immigration judge's review of their bond revocation, a plain reading of Section 1226 and its implementing regulations shows that noncitizens are not entitled to notice or a hearing *before* their bond is revoked and they are re-detained. *See also O.F.C. v. Almodovar*, 2026 WL 74262, at *6 (S.D.N.Y. Jan. 9, 2026) ("Nothing in the brief text of the statute and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and re-detention.").

Here, Mr. Meran Garcia argues that he is not subject to mandatory detention pursuant to Section 1225(b)(2). Rather, DHS' authority to detain him arises under Section 1226(b). However, Mr. Meran Garcia contends that the Government violated Section 1226(b) and its implementing regulation, 8 C.F.R. § 1236.1(c)(9), because the Government failed to provide notice of the revocation of his bond or an opportunity for him to be heard *prior* to being re-detained. Mr. Meran Garcia further argues that the Government has not met its burden to demonstrate that any changed circumstances has occurred that would justify the revocation of his bond. (ECF 5-1 at p. 2). (ECF 1 at ¶¶ 48-51). In its response, the Government notably makes no argument regarding the revocation of Mr. Meran Garcia's bond. Instead, the Government makes its standing argument that, because Mr. Meran Garcia is present in this country and has not been admitted, he is an

---

Enforcement, as appropriate in the context in which the term appears."). A decision by an immigration judge can then be appealed to the Board of Immigration Appeals, ("BIA"). 8 C.F.R. § 1003.19(f).

"applicant for admission" who is also "seeking admission" such that he is lawfully being detained pursuant to Section 1225(b)(2).

Based on this Court's thoughtful analysis of Sections 1225 and 1226 of the INA in *Kumar v. McShane*, 2025 WL 3722005, at *5-7 (E.D. Pa. Dec. 23 2025) and other cases, this Court finds that, under the circumstances of this case, the Government is not authorized to detain Mr. Meran Garcia pursuant to Section 1225(b)(2).  Instead, the Government's authority to detain Mr. Meran Garcia lies exclusively within Section 1226.

As alleged, on April 10, 2025, Mr. Meran Garcia was released from ICE detention on a $15,000 bond by an immigration judge.  (ECF 1 at pp. 20-26).  Almost a year later, on April 2, 2026, ICE agents arrested Mr. Meran Garcia at a regularly scheduled ICE check-in, and informed him that his bond was being revoked due to his alleged violation of a protection from abuse order issued by a Delaware state-court official.  (ECF 4-2 at p. 2).  The Government authority to revoke Mr. Meran Garcia's bond and detained him was done in compliance with the broad revocation authority under Section 1226(b).  Consistent with the regulations cited, Mr. Meran Garcia may appeal the Government's bond revocation and re-detainment to an immigration judge.  Mr. Meran Garcia has not informed this Court as to whether he has or has not sought such an appeal. Accordingly, this Court finds that Mr. Meran Garcia has not satisfied his burden to show that the INA has been violated and that "[h]e is in custody in violation of the . . . laws . . . of the United States[.]"[7]  28 U.S.C. § 2241(c)(3).

---

[7]      Mr. Meran Garcia raises several additional arguments; *to wit*: (1) his bond was not revoked by the ICE Executive Associate Director; (2) the Government failed to make findings that he was dangerous or unlikely to comply with a removal order; and (3) there are no grounds for the Government to revoke his bond, such as conduct indicating that release would no longer be appropriate or violations of the conditions of his bond.  (ECF 1 at ¶¶ 48-51).  Mr. Meran Garcia is mistaken as to who is permitted to revoke his bond. Pursuant to 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9), a "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" may revoke a noncitizen's bond.  As to Mr. Meran Garcia's remaining

***Due Process Claim***

Mr. Meran Garcia also challenges his re-detention on substantive and procedural due process grounds. On his substantive due process claims, Mr. Meran Garcia argues that his re-detention is not reasonably related to the two regulatory purposes of immigration detention — preventing danger to the community or flight prior to removal — because he has complied with the conditions of his bond and there have been no changes in circumstances warranting the revocation of his bond. As for his procedural due process claim, Mr. Meran Garcia contends that he was entitled to notice and an opportunity to respond prior to the Government's revocation of his bond and his re-detention. Each argument is addressed in turn.

*Substantive Due Process*

"To show a violation of substantive due process, a plaintiff must demonstrate that his detention served no legitimate government purpose by demonstrating 'a misuse of governmental power that shocks the conscience.'" *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 42 (E.D. Pa. 2025) (quoting *Desousa v. Garland*, No. CV 21-3961, 2022 WL 1773604, at *3 (E.D. Pa. May 31, 2022)). "In the immigration context, 'the Court must determine whether Plaintiffs' detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose.'" *Id.* (quoting *Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020)).

---

arguments, the Board of Immigration Appeals, ("BIA"), has recognized that "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Sugay*, 17 I. & N. Dec. at 640. Mr. Meran Garcia argues repeatedly in his filings that there has been no "change in circumstances" since he was originally released on bond in April 2025. He is mistaken and appears to ignore the fact that he had an active arrest warrant for alleged violations of a protection from abuse order at the time of his arrest. This Court provides no opinion about whether changed circumstances exist justifying re-detention. Rather, this Court's *habeas* jurisdiction is limited to determining whether the Government complied with INA and its implementing regulations, as well as the Constitution.

Here, the immigration regulatory scheme explicitly authorizes, in certain circumstances and under particular provisions, re-detention of a noncitizen previously released on bond.  *See* 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).  The government has a legitimate government purpose in ensuring that a noncitizen released on bond would not flee or be a danger to the public.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release a[ noncitizen] . . . under the conditions at [Section 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Here, the record shows that the Government's decision to re-detain Mr. Meran Garcia was based on an outstanding active arrest warrant stemming from an alleged violation of a protection from abuse order that occurred while Mr. Meran Garcia was on release under a DHS bond.  Mr. Meran Garcia's Petition indicates that he resides in Delaware.  Protection from abuse orders issued in Delaware are "order[s] issued by the court to a respondent restraining said respondent from committing domestic violence against [a] petitioner, or a person in whose interest a petition is brought, and may include such measures as are necessary in order to prevent domestic violence."  Del. Code Ann. tit. 10, § 1041(5).  A violation of such an order may result in "(1) [a] finding of contempt; (2) [c]riminal prosecution; and (3) [i]mprisonment or fine or both."  Del. Code Ann. tit. 10, § 104(h)(1)-(3).  While an arrest warrant is not evidence of guilt, this Court finds that Mr. Meran Garcia's re-detention based on an alleged violation of a protection from abuse order is rationally related to a legitimate Government's purpose.  As such, this Court finds that Mr. Meran Garcia's substantive due process rights were not violated.

*Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citation modified). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

To determine whether Mr. Meran Garcia has been denied procedural due process when he was re-detained by ICE, this Court applies the *Mathews v. Eldridge* balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As for the *Mathews* private interest factor, Mr. Meran Garcia's freedom is paramount here. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 695 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Even as a noncitizen released from custody on bond, Mr. Meran Garcia has a protected liberty interest in his "continued liberty." *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d

10

1021, 1030 (N.D. Cal. 2025) ("[I]ndividuals conditionally released from detention have a protected interest in their 'continued liberty.'" (citing *Young v. Harper*, 520 U.S. 143, 147, 149 (1997)).

As to the second factor of the *Mathews* test, the Court must consider "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. While the INA and its implementing regulations require almost no procedures to revoke a noncitizen's bond and re-detain the noncitizen, *see* 8 U.S.C. § 1226(b), 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9), the regulations allow a noncitizen to appeal the revocation of bond and re-detention to an immigration judge, 8 C.F.R. § 1003.19(a), and, if requested, to the BIA, 8 C.F.R. § 1003.19(f). Additionally, as the BIA found in *Sugay*, these subsequent procedures serve to ensure that the Government's decision to revoke a noncitizen's bond is not arbitrary or capricious. 17 I. & N. Dec. at 639-40. As such, this Court finds that the Government's broad discretion to revoke Mr. Meran Garcia's bond and re-detain him does not pose a substantial risk of erroneous deprivation provided that the procedures afforded to Mr. Meran Garcia as a Section 1226(b) detainee are made available to him.

As for the final *Mathews* factor, this Court recognizes the Government's interest in ensuring that a noncitizen released on bond would not flee or be a danger to the public. *See Zadvydas*, 533 U.S. at 690. Here, Mr. Meran Garcia alleged violation of a protection from abuse order falls withing this factor.

On balance, the *Mathews* factors weigh in favor of finding that Mr. Meran Garcia was not unconstitutionally deprived of any procedural protections. Instead, Section 1226(b) and its implementing regulations provide him with adequate procedural protections that he can yet apparently has not taken advantage of those protections. Because he has not demonstrated that he has been deprived of these procedural protections at this time, this Court finds that Mr. Meran

Garcia has not met his burden to show that his procedural due process rights were violated, and, as such, cannot show that "[h]e is in custody in violation of the law or the Constitution . . . of the United States[.]"  28 U.S.C. § 2241(c)(3).

**CONCLUSION**

For the reasons set forth, Mr. Meran Garcia's *petition for a writ of habeas corpus* is denied. Notably, the Government's authority to detain Mr. Meran Garcia falls under Section 1226(b) of the INA.  Consistent with the analysis, Mr. Meran Garcia has adequate procedural protections — he may appeal his bond revocation and re-detention to an immigration judge and, if needed, may exercise his appellate rights.  An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUIÑONES ALEJANDRO*, J.